[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
CT Page 13322
This is a contested action for dissolution brought by the plaintiff wife, whose maiden name was Katharine Keser, on the grounds of irretrievable breakdown.
The Plaintiff and Defendant were intermarried in South Windsor, Connecticut, on December 8, 1979. There are no minor children issue of this marriage.
From the credible evidence proffered at trial, the Court finds the following chronology of events: Sometime in 1977 the plaintiff moved into defendant's Farnham Road, South Windsor, home with her three minor children from a former marriage, Dede, Kimberly, and Eddie. The following year, the plaintiff sold a residence which she owned in Newington, Connecticut, and purchased another at 165 Skyline Drive, South Windsor, still her current residence. Almost all of the proceeds from the Newington home were used to purchase the Skyline Drive residence. Although the defendant's name is on the note for the loan balance for this residence, the plaintiff holds title in her name solely. Over the years, both parties lived in the residence. There were a number of improvements made to the home, including but not limited to an upgrading of the central air conditioning system, the addition of a swimming pool, and the addition of various decks. Currently, the plaintiff is receiving $200.00 per month in rent for a room at the Skyline Drive address from her daughter, Kimberly, and another $400.00 a month rent from an acquaintance of Kimberly's. Both parties agree that the current value of the Skyline Drive residence is $150,000.00, with only $12,000 to $14,000 remaining on the mortgage.
Some time in 1978, the parties started a business, The Hartford Paving Company, which they ran together out of the Skyline Drive home. In his prior employment with the Mitchell Trucking Company, the defendant had acquired some knowledge of the paving business which he put to good use in the development of his own company. The plaintiff ran the office end of the company out of the home, taking orders over the telephone, and dealing with the various paper work, including depositing of incoming checks, payment of bills and payroll.
Over the next few years, the company prospered. This was reflected in the rather ostentatious lifestyle of the parties, as seen in the cars they drove and the jewelry and furs the CT Page 13323 defendant purchased for the plaintiff. The evidence reflects that a significant amount of this income was never reported for tax purposes and that both parties freely used company funds for both necessary and luxury items throughout the marriage. They kept significant amounts of cash in at least one safe deposit box from funds garnered from the company. Sometime in 1988, the plaintiff admittedly removed $85,000.00 from one such safe deposit box containing approximately $192,000.00 in cash.
In 1989, a number of consumers filed complaints against the company charging certain fraudulent practices in connection with paving contracts. As a result of these complaints, a stipulated judgment was entered into on October 2, 1990, between the State of Connecticut and Hartford Paving, Inc. and the defendant in this action, one provision of which required the defendant to pay costs and attorney's fees in the amount of $17,500.00. In addition to the fine, the State also required repayment to the consumers involved in the amount of approximately $47,000.00. These monies have not yet been paid. As a further result of this action, the defendant was forced to resign as president of Hartford Paving Company on April 3, 1991. (See plaintiff's Exhibit Z.) As a result of all these problems, both parties started a new business in order to continue to pave driveways and roads. The H.P. T. Company was formed for that purpose. Hartford Paving still remained in existence and did snowplowing and leasing of machinery. Neither of the parties were allowed to be officers of H.P. T., but could remain as employees. The plaintiff's oldest son, Edward Czelazewicz, was the person who was to run the company. (See plaintiff's Exhibit BB.) Despite all of these problems, defendant's Exhibit 13 indicates that Hartford Paving, Inc. had a net income of over one-half million dollars in 1990.
Meanwhile, problems in the marriage surfaced even earlier. As early as 1981, plaintiff suspected defendant of being unfaithful. He often criticized her physical appearance and urged her to have various types of cosmetic surgery, and often threatened divorce. A number of witnesses in addition to the plaintiff testified to the fact that the defendant had difficulty in controlling his temper. Often disagreements between the two resulted in destructive outbursts by the defendant, as evidenced by plaintiff's Exhibits A — D. One such incident even resulted in the discharge of a gun in the residence when plaintiff refused to comply with defendant's request. Although he threatened to kill himself in the basement office, and was nowhere near any other CT Page 13324 member of the family at the time he discharged the gun, he did shoot through a wall in the home and the police were called and an arrest resulted. Because of this and other incidents, plaintiff is requesting a permanent restraining order enter against the defendant.
The evidence also indicates that throughout the marriage, plaintiff willingly participated in the process in which both these parties used a good deal of unreported income to live in a very comfortable fashion. In addition to having access to large amounts of cash from the company at any time she wished, the plaintiff admitted to the use of cocaine on a regular basis between the years 1988 and early 1990. During this time, she would spend Hartford Paving Company funds, not only for her own use, but would provide drugs for friends as well. She very frequently abused alcohol during this period. The defendant, too, sometimes drank excessively, and on occasion, used amphetamines and marijuana. Although defendant would like this court to believe that the primary cause of the breakdown of this marriage was the drinking and cocaine use by his wife, it is apparent from the evidence that both parties had a hand in causing this marriage to fail.
The financial affidavit filed by the plaintiff, who is now 53 years old, indicates that she is currently unemployed. She testified that she has a high school degree, is in good health, and has had some part-time clerical work since she and the defendant have been living apart. She also indicates that she is in training to learn the use of a computer in order to seek further employment. The defendant, who is now 55 years old, has had two heart attacks and bypass surgery. Yet, he did testify that in 1994, H.P. T. earned $450,000.00. He further stated that he continued to take money from that company's income, just as he had done historically in the past with respect to Hartford Paving. In fact, one such check, dated October 1994, was in the amount of $10,000.00. (See plaintiff's Exhibit YY.)
In arriving at financial orders in this case, the court has considered all of the criteria in §§ 46b-61, 46b-81, 46b-82 and46b-84 of the Connecticut General Statutes. Accordingly, dissolution of the marriage shall enter on the grounds of irretrievable breakdown and the following financial orders shall enter:
1. Plaintiff shall retain her interest in 165 Skyline CT Page 13325 Drive, South Windsor, Connecticut.
 2. Plaintiff shall transfer her interest in the Dockominium in Old Saybrook, Connecticut, to the defendant.
 3. Plaintiff shall retain the 1988 Mercedes-Benz automobile, bank accounts, stocks and bonds, life insurance, pension, jewelry, furs, and furniture listed on her financial affidavit.
 4. Defendant shall retain all assets listed on his financial affidavit with the exception of a one-half interest in 165 Skyline Drive, South Windsor, Connecticut.
 5. Plaintiff will transfer her 80 shares in Hartford Paving, Inc. to the defendant.
 6. The defendant will indemnify and hold plaintiff harmless as to any obligations in connection with these two companies.
 7. The defendant will cooperate in making medical insurance available to the plaintiff, pursuant to COBRA.
8. Neither party shall be awarded alimony.
 9. Each party shall be responsible for his or her own counsel fees.
 10. Plaintiff's maiden name of Katharine DeRonde Keser shall be restored to her.
 11. Defendant shall be permanently restrained from having any contact with the plaintiff, now or at any time in the future, in accordance with an Order presently in effect in this action.
SO ORDERED.
SANTOS, J. CT Page 13326